# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

**CRIMINAL NO.** 09-228 (FAB)

CARLOS APONTE-SOBRADO [2],
JOSE VIZCARRONDO-CASANOVA [6],
ERIK DIAZ-COLON [11],

**Defendants.**

## MEMORANDUM AND ORDER

BESOSA, District Judge.

On September 19, 2011, a jury found Carlos Aponte-Sobrado ("Aponte"), Jose Vizcarrondo-Casanova ("Vizcarrondo"), and Erick Diaz-Colon ("Diaz") (together, "defendants"), guilty of the following offenses: (1) conspiracy to commit the crime of carjacking, (2) conspiracy to deprive victim of his rights secured by the Constitution or laws of the United States, and (3) actual deprivation of victim's rights secured by the Constitution or laws of the United States. (Docket No. 729.) Defendants Aponte and Vizcarrondo were also found guilty of the crime of carjacking. Id. On November 14, 2011, defendant Diaz moved for judgment of acquittal and/or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. (Docket No. 754.) Defendants Aponte and Vizcarrondo filed a motion to adopt defendant Diaz-Colon's motion. (Docket No. 755.) The Court granted the motion for joinder.

(Docket No. 756.)  On December 14, 2011, the government filed a response to defendants' motion.  (Docket No. 779.)

## DISCUSSION

A court may enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed.R.Crim.P. 29(a).  A defendant may move the court for a judgment of acquittal after the close of the government's case or at the close of all evidence.  Id.  Courts may reserve their decision on the motion, submit the case to the jury, and decide upon the motion before or after the jury returns a verdict of guilty. Fed.R.Crim.P. 29(b).

In reviewing a motion for judgment of acquittal, courts must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt."  U.S. v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).  This standard requires the resolution of all evidentiary disputes and credibility questions in favor of the government; the Court must also draw all reasonable inferences in favor of the government's case.  Id.  Thus, the jury's verdict stands unless the evidence could not have persuaded a rational trier of fact of the defendants' guilt beyond a reasonable doubt. U.S. v. Soler, 275 F.3d 146, 153 (1st Cir. 2002) (citing Lara, 181

F.3d at 200). The Court assesses only the evidence admitted at trial in applying the sufficiency standard. United States v. Diaz, 300 F.3d 66, 77 (1st Cir. 2002).

Defendants allege the following: (1) the government failed to establish a violation of Count 5, 18 U.S.C. § 241; (2) the Court failed to instruct the jury properly on the need for a finding of state action to convict the defendants of Count 5; (3) the government inappropriately vouched for the credibility of its witnesses in their closing rebuttal arguments; and (4) the government disparaged the defense's case by referring to information not on the record. Defendant Diaz-Colon adopts and reiterates the motion for judgment of acquittal made at the close of the government's case. The Court considers all the arguments made and addresses each in turn.

### A. The Government Established A Violation of Count 5

Defendants were convicted of violating 18 U.S.C. § 241, which makes it an offense for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same." The right or privilege at issue here was the victim's right to be free from unreasonable searches and seizures under the Fourth Amendment of the Constitution.

Defendants maintain that "a private individual cannot violate a person's right to be free from unreasonable searches and seizures." (Docket No. 754 at 3.) Defendants further contend that there was no "meaningful" participation of a state actor and that defendants were not "made aware" of the decision to incorporate a police officer and his partner into the team that would stop and search the victim. (Docket No. 754 at 5-6.)

The Supreme Court's decision in United States v. Price is controlling. 383 U.S. 787 (1966). The Supreme Court held that private individuals, acting jointly with state officials, can be held liable for violations of section 241 where "defendants acted 'under color of law' and [] the conspiracy included action by the State through its law enforcement officers" to deprive the victim of his rights under the Constitution or the laws of the United States. See Price, 383 U.S. at 799. While defendants were undisputably not state officials, they engaged in a conspiracy with a police officer from the Police of Puerto Rico to deprive the victim of his rights under the Fourth Amendment. The defendants' knowing and willing participation in the conspiracy was demonstrated by evidence presented at trial.

Contrary to defendant Diaz's allegation that "[t]here was no evidence that Mr. Diaz Colon was made aware of [the] decision to incorporate [Officer] Hernandez and his partner to the team", co-defendant Rosario testified at trial regarding being approached by

defendant Diaz about stealing drugs from the victim. Specifically, co-defendant Rosario stated that El Gallo (a/k/a Erik Diaz-Colon) stated the following: "So its got to be a real intervention. He's got to believe that it's going to happen. You got to have the blinkers, you got have the uniforms. Its got to be for real so he gets stopped. If not, he's going to know it came by me, because word is out that I use cops to do these kind of jobs." (Docket No. 661 at 42.) There is no doubt that defendant Diaz was a willing and knowing participant in the conspiracy to conduct an illegal search and seizure on the victim. Moreover, as the government points out in its opposition to defendants' motion, even if it is true that Diaz did not specifically know that co-defendant Hernandez (the police officer) would be involved in the conspiracy, "the law does not require that defendant Diaz know every other member of the conspiracy, including the State actor." (Docket No. 779 at 7.) See Blumenthal v. United States, 332 U.S. 539, 557 (1947) (noting that because "[s]ecrecy and concealment are essential features of a successful conspiracy", the law only requires "showing sufficiently the essential nature of the plan and [defendants'] connection with it, without requiring evidence of all its details or of the participation of others.")

The knowing and willing participation of defendants Aponte and Vizcarrondo in the conspiracy was even more evident from the evidence produced at trial. Co-defendants Hernandez, Herrera, and

Rosario all testified that defendants Aponte and Vizcarrondo were present at the meeting in *Plaza Encantada*, where they met just hours before the illegal car stop and discussed the details of the scheme, which included the use of co-defendant Hernandez and his police vehicle. (Docket Nos. 610 at 75-80; 614 at 86-88; 661 at 56-58.) Both defendants Aponte and Vizcarrondo were present during the illegal car stop, where they witnessed the use of co-defendant Hernandez's police vehicle during the intervention. (Docket No. 614 at 101-105.) The evidence at trial demonstrates that there was sufficient evidence to find defendants Diaz, Aponte and Vizcarrondo guilty of conspiring to "injure, oppress, threaten, or intimidate" the victim "in the free exercise or enjoyment" of his rights under the Fourth Amendment. Defendants' motion for judgment of acquittal on their section 241 conviction is **DENIED**.

**B.   The Court's Jury Instructions Regarding Count 5 Were Proper**

The defendants next request that the conviction on Count 5 be vacated because the jury was not appropriately instructed as to "the need for a finding of state action in order to convict the defendants under §241." (Docket No. 754 at 6.) Notably, defendants fail to cite to a single case in support of their argument. In fact, the First Circuit Court of Appeals has previously held that there was no plain error where a court's instructions regarding section 241 omitted "any instruction as to the requirement of 'color of law' or state action." <u>United States</u>

v. Lebron-Gonzalez, 816 F.2d 823, 829 (1st Cir. 1987) (finding no plain error in the instructions "as a whole" where "in describing the liberty right at stake in [] the section 242 violation of actual deprivation, the court made clear that the right was to be free of physical assault 'by a person acting under the color of law of any state.'") The Court's instructions to the jury regarding Count 5 reference the "color of law" requirement twice, and also explicitly mention that requirement several times in the section 242 instruction. See Docket No. 727 at 40, 43, 49-56. Thus, the jury instructions were proper and defendants' request to vacate their conviction on Count 5 is **DENIED**.

**C.  The Government Did Not Engage in Improper Witness Vouching**

The defendants finally assert that prosecutorial misconduct during the government's rebuttal argument warrants that the defendants' convictions be vacated. (Docket No. 754 at 6-9.) The government counters that their rebuttal arguments were in direct response to the defendants' closing arguments and that the government's comments were based on facts brought out at trial and already before the jury. (Docket No. 779 at 8-15.) The Court has conducted an independent review of the record, and addresses the defendants' allegations below.

"Improper vouching occurs when the government 'places the prestige of the United States behind a witness by making personal assurances about the credibility of a witness,' . . . or implies

'that the jury should credit the government's evidence simply because the government can be trusted." United States v. Robinson, 473 F.3d 387, 396 (1st Cir. 2007) (citations omitted). An argument by a prosecutor, however, that "does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching." United States v. Perez-Ruiz, 353 F.3d 1, 9-10 (1st Cir. 2003) (citing United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir. 2000)). The First Circuit Court of Appeals in Perez-Ruiz also stated that statements by a prosecutor that are "a logical counter to the assertions of defense counsel, made in summation, that various government witnesses had fabricated their testimony " are not necessarily considered to be vouching. Perez-Ruiz, 353 F.3d at 10.

The language in the government's rebuttal argument at issue consists of the following statements:

> MR. CONTRERAS: But let me tell you something else. They know (indicating) if they do not tell the truth they're not going to jail for 30 years, they're going to jail for life. Forever, no possibility of parole, do not collect $200. Life. That's not an incentive to lie, that's an incentive to tell the truth. And every cooperator testified, even Alexis who's free on bond, said that. Life. Forever. You miss one step on that witness stand, life. You think the Government, these prosecutors, are going to file a motion for downward departure if –
>
> MR. MIRANDA: Objection, Your Honor. He's vouching. He's vouching.
>
> MR. CONTRERAS: I said "the Government," Your Honor. I'll withdraw the comment "these prosecutors." That comment's withdrawn. Do you think the Government is going to file a motion for downward departure if there's

a scintilla of evidence that these witnesses have not told the truth? Have not testified –

MR. MIRANDA:  Your Honor, that's vouching.

MR. CONTRERAS:  I withdraw "not tell the truth." Have not testified untruthfully?  It's not going to happen. It is not going to happen.  And let me tell you something about all this to-do about inconsistent statements.  That actually shows they were credible.  The Government could have put -- they could have put all the cooperators in a room and say:  Let's get this story straight. Work it out.  You guys, all five of you, get in that room and you come out with a story that's consistent.  I don't want you leaving that room until the story's consistent so the jury knows you're telling the truth.

. . .

He has no promises -- he actually has no promises from the Government.  You know the only promise he has?  That if he testifies truthfully, we might file a motion for downward departure.  If you testify truthfully.  Not if they convict.  I'm going to tell you right now, the Government is submitting to you the result of this trial has nothing whatsoever to do with whether these cooperators get a motion for downward departure.  It has nothing –

MR. MIRANDA:  Objection.

THE COURT:  What's the objection?

MR. MIRANDA:  Vouching.

THE COURT:  Overruled.

MR. CONTRERAS:  And that fact is in evidence.  It has nothing to do with it whatsoever.  And even if the Government does file a motion for downward departure, it's the judge that ultimately decides the sentence.  The Government could file the motion, ask for time served, the judge can give life.  Okay? Life.  And I don't want to belabor the point too much, but it has to be slammed home.  The incentive in this case is to tell the truth. Not to lie.  Any of those witnesses lie on that stand, they're going to jail for life. That's a huge incentive to tell the truth.

(Docket No. 766 at 84-99).

The transcript of the prosecutor's closing rebuttal argument shows that the government has not put the prestige of the United States government behind the credibility of the witnesses, nor have the prosecutors imparted personal belief in the veracity of the government's witnesses. Cf. United States v. Manning, 23 F.3d 570, 572-73 (1st Cir. 1994) (finding that the prosecutor's comments that a "prosecution witness cannot [lie]" and is "bound by the truth", and that the "prosecution must always be fair" were improper witness-vouching). It can sometimes be difficult to tell the difference between a proper argument about the credibility of a witness and improper witness vouching, and the government's arguments regarding the witness's "incentive to tell the truth" (Docket No. 766 at 84) present a closer case than the government's other statements during rebuttal. In this context, the Court finds the government's statements to be proper because they were in direct response to the defendants' closing arguments that the government's witnesses lied at trial in order to satisfy the demands of the government and obtain a reduced sentence. Moreover, the comments made regarding the potential for a downward departure for cooperators who testified were facts that came out at trial and were in evidence before the jury. See Rodriguez, 215 F.3d at 124-125 (finding that government's arguments did not constitute improper witness vouching where they were a "proper response to

defense arguments that [the witness] tailored his testimony to please the prosecutors" and where "[t]he jury had in evidence the agreements [the witness] made with the government, and those agreements did provide that he could be punished if he testified falsely.")  The Court finds that the government did not engage in improper witness-vouching during its rebuttal argument, and therefore, defendants' motion to vacate their convictions is **DENIED**.

**D.  The Government Did Not Disparage the Defendants' Case**

The defendants' final argument is that the government "disparaged" the defendants' case when it questioned "the marital fidelity" of Nydia Cirino, defendant Diaz's wife. (Docket No. 754 at 8.)  The government responds that its comments "did not serve to attack or disparage" defendant Diaz's wife, but were simply a response to the defendant's summation. (Docket No. 779 at 17.)  A review of the record demonstrates that it was defense counsel who brought up the fact that the government had inquired into the fidelity of his client's wife in his closing arguments. Moreover, contrary to defendants' assertions, the line of questioning regarding the fidelity of defendant Diaz's wife was in evidence, as the witness was questioned about her relationships with other men during cross-examination.  See Docket No. 720 at 89-91.  The government's statements were in response to defendant's statements, they referenced information that was part of the record, and they

did not "disparage" defendant's case.  Therefore, defendants' motion for a new trial on this basis is **DENIED**.

## CONCLUSION

The Court **DENIES** defendants' motion for judgment of acquittal and motion for a new trial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 8, 2012.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
United States District Judge